Vincent Renda, Esq. (CSB#213985)
RENDA LAW OFFICES, P.C.
600 West Broadway, Suite 400
San Diego, CA 92101
Telephone: (619) 819-0011
Facsimile: (619) 819-0012
Email: vr@rendalawoffices.com
Attorneys for Plaintiffs-Creditors

Jason E. Baker, Esq. (CSB#197666)
Brent Jex, Esq. (CSB#235261)
KEEGAN & BAKER, LLP
6255 Lusk Boulevard, Suite 140
San Diego, CA 92121
Tel: (858) 558-9400
Fax: (858) 558-9401
Email: JBaker@KeeganBaker.com
         BJex@KeeganBaker.com
Attorneys for Plaintiffs-Creditors

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
_____          Chapter 7

In re:

DANIEL JOSEPH SHAW,


                          Debtor.                Case No. 15-50656-SLJ7
_____

JEFFREY J. GARCIA, individually and as trustee          Adv. Pro. No. 15-05060
of the Jeffrey Jason Garcia Family 2001 Trust dated
November 19, 2001; DAVID OROSHNIK;
TODD SMITH; and ROBERT GARCIA,                **FIRST AMENDED COMPLAINT**

                          Plaintiffs,

         -against-

DANIEL JOSEPH SHAW;

                          Defendant.
_____

1
FIRST AMENDED COMPLAINT

**FIRST AMENDED COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT
PURSUANT TO 11. U.S.C. SECTION 523(a)(4) AND 523(a)(6)**

Plaintiffs-Creditors Jeffrey J. Garcia, individually and as trustee of the Jeffrey Jason Garcia Family 2001 Trust dated November 19, 2001; David Oroshnik; Todd Smith; and Robert Garcia respectfully allege:

## JURISDICTION

1.      On February 27, 2015, Daniel Joseph Shaw (the "**Debtor**") filed a voluntary petition (the "**Petition**") for relief under chapter 7, of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of California.

2.      On March 31, 2015, the Debtor's duly-noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the "**Section 341 Meeting**").

3.      As of the date of this First Amended Complaint, the Debtor has not been granted a discharge.

4.      This is an adversary proceeding in which the Plaintiffs are seeking a determination as to the dischargeability of the debt owed by the Debtor to Plaintiffs under Bankruptcy Code §§ 523(a)(4), 523(a)(6).  The purpose of Section 523 of the Bankruptcy Code is to protect victims of fraud.  *Sasson v. Sokoloff*, 424 F.3d 864, 875 (9th Cir. 2005).  Plaintiffs are the victims of Debtor's fraud.

5.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § 523.

6.      This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and 157(b)(2)(J).  As this First Amended Complaint objecting to dischargeability is a core proceeding before the U.S. Bankruptcy Court, Plaintiffs also request that this Court determine liability for the debt to Plaintiffs and the amount of the debt owing.  *Sasson*, 424 F.3d at 867-870; *In re Kennedy*, 108 F.3d 1015 (9th Cir. 1997).

2
FIRST AMENDED COMPLAINT

## **PARTIES**

7.     Debtor-Defendant DANIEL JOSEPH SHAW (hereinafter "**Shaw**") is an individual and resident of the state of California, and is the Debtor in the above-captioned case.

8.     Shaw operates out of his corporate offices located at 15700 Winchester Boulevard, Los Gatos, California 95030.

9.     Plaintiff JEFFREY JASON GARCIA (hereinafter "**Jeff Garcia**") is an individual and resident of the state of California.  Garcia is the trustee of the Jeffrey Jason Garcia Family 2001 Trust dated November 19, 2001 (the "**Garcia Trust**") and brings this action on his behalf individually, as well as in his capacity as trustee of the Trust.  Plaintiff Jeff Garcia is a creditor of the Debtor.

10.     Plaintiff DAVID OROSHNIK (hereinafter "**Oroshnik**") is an individual and resident of the state of California.  Plaintiff Oroshnik is a creditor of the Debtor.

11.     Plaintiff TODD SMITH (hereinafter "**Smith**") is an individual and resident of the state of California.  Plaintiff Smith is a creditor of the Debtor.

12.     Plaintiff ROBERT GARCIA (hereinafter "**Robert Garcia**") is an individual and resident of the state of California.  Plaintiff Robert Garcia is a creditor of the Debtor.

## **GENERAL ALLEGATIONS**

**A.     Defendant Shaw Is A Real Estate Broker/Syndicator Who Has Filed For Bankruptcy, Is Facing Professional Licensing Discipline, Is Charged With Six Counts Of Felony Grand Theft For Embezzling Over $500,000.00, Is Being Sued By Many Of His Current And Former Clientele, And Is Being Sued By The DOJ For ERISA Violations.**

13.     Defendant Shaw is a broker licensed by the Bureau of Real Estate (hereafter "**BRE**"), license number 00971281.  Shaw operates a real estate investment firm through his company Cupertino Capital.  He provides traditional buy/sell brokerage services to investors.  Shaw also operates as a real estate syndicator, and is a self-styled expert in creating, managing and servicing real estate investment loans through his companies, Cupertino Capital and LG Servicing.

14.     These private investments typically require Shaw's clientele to contribute their

3
FIRST AMENDED COMPLAINT

money into investment pools that are usually structured as limited liability companies, corporations, or fractional ownership of private loans to individuals (the "**Investment Pools**"). The Investment Pools then loan the investors' pooled money to real estate speculators and developers (the "**Borrowers**"), and these loans are supposed to be secured by trust deeds on real estate development projects (the "**Hard Money Loans**").

15.     Shaw compensates himself richly for his services.  *First*, as the originating loan broker, Shaw receives a fee from the Borrowers of approximately 3% of the principal amount of the Hard Money Loans, plus an additional 2% for each time a loan is renewed or extended. *Second*, as the employed broker for the Investment Pools, Shaw receives a commission of 3-6% of the principal amount of the Hard Money Loans for each time that real estate securing the Hard Money Loan is purchased or sold.  *Third*, as the servicing agent of the Hard Money Loans through LG, Shaw receives an annual servicing fee of .5% to 1.0% of the principal amount of each Hard Money Loan.  *Fourth*, Shaw sometimes participates in the equity of the Hard Money Loans by issuing himself an ownership interest in the Investment Pools.  *Fifth*, Shaw sometimes participates as a Borrower, and uses Hard Money Loans to fund investments for his own profits.

16.     Shaw is facing a litany of legal and disciplinary actions arising from his professional misconduct.  It is difficult, if not impossible, to believe that Shaw and his entities will retain the ability to lawfully manage and service the Hard Money Loans once the groundswell of legal actions against Shaw is resolved.

> **1.     Shaw Is Currently Facing Six Counts Of Felony Grand Theft And Aggravated White Collar Crime Enhancement For Embezzling Over $500,000.00 Of His Investors' Money.**

17.     On June 15, 2012, a felony complaint[1] and arrest warrant was issued, charging Defendant Shaw with six counts of felony grand theft for fraud and embezzlement, with an aggravated white collar crime enhancement.  The felony complaint alleges that two (2) other investors in Defendant Shaw's Investment Pools discovered that Shaw had examined the title to real estate that was supposed to secure their investments totaling over $500,000.00, and had

---

[1] *People v. Shaw*, case number C1234792, filed June 15, 2012 in the Santa Clara Superior Court.

Case 15-05060    Doc# 9    Filed: 09/28/15    Entered: 09/28/15 11:06:15    Page 4 of 12

FIRST AMENDED COMPLAINT

discovered that Shaw had either failed to record trust deeds to secure their loans, or had subordinated their loans without their consent, thereby rendering their investments worthless.

18.     On or about April 30, 2014, Dan Shaw was convicted of two (2) counts of Sections 484/487(a) of the California Penal Code for felony Grand Theft.

**2.     The BRE Is Pursuing Suspension Or Revocation Of Shaw's Broker's License For Professional Misconduct.**

19.     Effective July 28, 2004 in Case No. H-8634, Mr. Shaw's real estate broker's license was suspended by the BRE (then the DRE) for violating various provisions of the Business and Professions Code relating to mishandling of client trust funds and failing to timely record trust deed investments.

20.     Effective January 27, 2014, in Case No. H-11483, the BRE again suspended Mr. Shaw's real estate broker's license for again for violating various provisions of the Business and Professions Code relating to mishandling of client trust funds; failing to timely record trust deed investments; failing to provide mandatory disclosures to an investor; failing to undertake due diligence for an investor; and failing to timely report the filing of the felony complaint to the BRE.

21.     On February 11, 2015, the BRE filed another Accusation against Mr. Shaw, and the BRE is currently pursuing revocation of Mr. Shaw's broker's license.

**3.     Shaw Filed For Chapter 7 Bankruptcy Protection**.

22.     In February 2015, Shaw and his wife filed the Petition in this action.  According to the supporting schedules, Shaw has debts of over $28 million, and assets of only $508,391, of which the substantial majority ($500,074) are funds in his retirement accounts.

**4.     The Department of Labor Is Suing Shaw For Violations Of The ERISA Related To Professional Misconduct.**

23.     In March 2015, the U.S. Department of Labor filed a lawsuit[2] against Shaw, Cupertino Capital, and RMRF Enterprises, Inc. 401(K) Savings & Profit Sharing Plan under

---

[2] *Perez v. RMRF Enterprises, Inc. et al.*, case number 3:15-cv-1453 in the U.S. District Court for the Northern District of California.

FIRST AMENDED COMPLAINT

Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"). The ERISA complaint alleges Shaw breached his fiduciary duties and "caused the Plan to invest almost all of its assets in high-risk, hard-money loans purportedly secured by deeds of trust." The ERISA complaint seeks damages, an injunction preventing Shaw from serving as a fiduciary of, or service provider to, any ERISA-covered employee benefit plan.

### 5. Shaw Is Facing Many Lawsuits From His Current And Former Clientele.

24. Shaw's bankruptcy schedules revealed that Shaw is being sued by many of his current and former clientele, including:

a. 1115 Investors, LLC, case numbers 110CV190668 and 111CV208049 in the Santa Clara Superior Court;

b. 705A Investors, LLC, case number 1-10-CV190665 in the Santa Clara Superior Court;

c. Gordon Family Trust, case number 109CV56829 in the Santa Clara Superior Court;

d. Mark & Susan Micheletti, case number 112CV236598 in the Santa Clara Superior Court;

e. Robinson & Moretti, Inc., case number 109CV139588 in the Santa Clara Superior Court;

f. Sheryl Mondt, case number 111CV204182 in the Santa Clara Superior Court; and

g. Thomas P. Masters, case number 114CV274094 in the Santa Clara Superior Court.

### B. Shaw And Cupertino Capital Invested Millions Of Dollars Of Plaintiff Jeff Garcia's Money, And Plaintiff Jeff Garcia Still Has At Least $1.5 Million In Jeopardy.

27. Plaintiff Jeff Garcia retained an investment adviser in or about 2001 named Michael Holt.[3] During this time, Plaintiff Jeff Garcia was just beginning a career as an undrafted

---

[3] Holt and his affiliated entities have also filed for bankruptcy protection, and that case is close to being finalized. See *In re: Michael G. Holt, Sr.,* case number 13-26551-A-7 in the United States Bankruptcy Court for the Eastern District of California.

6
FIRST AMENDED COMPLAINT

professional football player with the National Football League.[4]  Holt recommended that Plaintiff Jeff Garcia invest a portion of his earnings in the Hard Money Loans, and Plaintiff Jeff Garcia did so, ultimately investing millions of dollars with Shaw and Cupertino Capital.  Plaintiff Jeff Garcia had no prior education, training or experience in real estate development, finance, or syndication, and therefore relied on Shaw as his agent and fiduciary to properly structure and manage these investments.

28.    Although requested by Plaintiff Jeff Garcia, Shaw has failed and refused to provide documents requested by Plaintiff Jeff Garcia concerning his participation in Investment Pools and the Hard Money Loans made by those Investment Pools.  Based on the best information currently available,[5] Plaintiff Jeff Garcia is informed and believes his current investments with Shaw and Cupertino Capital include:

| Investment Pool | Principal | % Owned |
|---|---|---|
| 0948 Investors, LLC | $75,000 | 14.62% |
| BDS Capital, Inc. | $200,000 | 33.33% |
| 1320 Investors, LLC | $87,500 | 10.00% |
| Thomas T. Nguyen | $150,000 | 50.00% |
| 1439 Investors, LLC | $75,000 | 10.71% |
| Tapestry Net, Inc. | $150,000 | 6.00% |
| 1495 Investors, LLC | $110,000 | 2.75% |
| San Marcos Villas (TWO), LLC | $200,000 | 5.80% |
| Miguel Gonzalez | $109,173 | 23.077% |
| Javier Martinez | $188,473 | 25.00% |
| The 2002 Intex Trust | $151,311 | 7.14% |
| Javier Martinez | $25,000 | 25.00% |

---

[4]  Although potentially lucrative, an NFL career is extremely competitive, and likely to be cut short by either competition or serious injury.  There is also ongoing litigation regarding the long-term effects of concussions suffered by NFL players such as Plaintiff Jeff Garcia.

[5] Including a "Lender Statement of Account" from LG Servicing dated October 15, 2014.

| TOTAL REMAINING: | **$1,521,458** | |
|---|---|---|

29.     Plaintiff Jeff Garcia is informed and believes and thereon alleges that the Hard Money Loans were often inadequately underwritten, at times either under-secured or unsecured, inadequately structured, and unreasonably risky based on the low expected rate of return. Plaintiff Jeff Garcia is further informed and believes and thereon alleges that Defendant Shaw mismanaged the Hard Money Loans, and engaged in professional misconduct to such an extent that it has jeopardized Plaintiff Jeff Garcia's remaining investments and placed Plaintiff at risk of losing the entire $1.5 million of remaining invested funds.

30.     For instance, Plaintiff Jeff Garcia is informed and believes that he has already suffered $490,000.00 in losses because three (3) loans made by Shaw and Cupertino Capital with Plaintiff Jeff Garcia's money in the amounts of $190,000.00, $100,000.00 and $200,000.00 [$490,000.00 total] have already been declared by Shaw to be total losses.

31.     Plaintiff Jeff Garcia is further informed and believes that other loans made with Plaintiff's money are also at risk of being substantial, if not total losses.  For instance, an investment of $75,000.00 in 0948 Investors, LLC is at risk of being a large loss as this Investment Pool owns a residential lot in Morgan Hill, California and the Fair Market Value of the lot is far below the amount of the Hard Money Loan used by 0948 Investors, LLC to take ownership of this lot.  Similarly, the loan made to Thomas Nguyen, which included $150,000.00 of Plaintiff Jeff Garcia's money, was used to purchase a parcel of property in Bakersfield, California and the Fair Market Value of this lot is far below the amount loaned to Nguyen to purchase the lot.

32.     Plaintiffs David Oroshnik, Todd Smith and Robert Garcia have also invested their monies with Defendant Shaw in Investment Pools and the Hard Money Loans made by those Investment Pools, and are similarly at risk of facing substantial losses.  Additionally, Todd Smith is the assignee of the rights and claims of other investors who have either already suffered damages, and/or are at risk of facing substantial losses.

33.     Plaintiffs Jeff Garcia, David Oroshnik, Todd Smith and Robert Garcia are collectively referred to herein as "Plaintiffs."

## **FIRST CLAIM FOR RELIEF**

### (Nondischargeability against Debtor Shaw pursuant to 11 U.S.C. § 523(a)(4))

34.    Plaintiffs adopt, incorporate by reference, and allege herein all of the allegations set forth in paragraphs 1 through 33, inclusive, as if set forth individually in this First Claim for Relief.

35.    Pursuant to § 523(a)(4) of the Bankruptcy Code, a debt incurred by a debtor who perpetrates fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny shall be nondischargeable.

36.    At all relevant times, Debtor Shaw was acting in a fiduciary capacity to Plaintiffs, and therefore owed Plaintiffs the duties of a fiduciary.

37.    Debtor Shaw breached his fiduciary duties to Plaintiffs by engaging in the following acts, among others:

a.    Failing to disclose to Plaintiffs the nature and extent of Shaw's relationship with Michael Holt and other professionals, including secret kickbacks and compensation paid by Shaw to Holt and other professionals to secure investments from Plaintiffs;

b.    Failing to disclose to Plaintiffs the receipt of secret profits from transactions, including the Hard Money Loans, that were funded, in part, with Plaintiffs' money;

c.    Failing to disclose to Plaintiffs that when Shaw became aware of investment opportunities, he would participate as a principal in the best and most lucrative investment opportunities rather than offer participation to Plaintiffs and other clientele;

d.    Willfully and knowingly creating real estate syndicates that Shaw knew, or reasonably should have known, would cause Plaintiffs and his other clientele to lose their invested money, so that Shaw could collect fees from originating the loan, collect a commission from participating as a broker in the transaction, and collect servicing fees through LG Servicing;

e.    Willfully and knowingly sending Plaintiffs and his other clientele documents such as a "Lender Statement of Account" that conceal, misrepresent, and otherwise obfuscate both the risk of loss, and actual losses suffered by the investors; and

FIRST AMENDED COMPLAINT

f.     Failing to disclose to Plaintiffs that Shaw was recklessly managing his invested funds in a manner that rendered the value of many of the Hard Money Loans worthless.

38.     As a direct and proximate result of the foregoing, Plaintiffs have suffered damages in an amount not presently ascertained but believed to be between $500,000.00 and $2.5 million, which should be exempted from discharge in Debtor Shaw's bankruptcy.  Based on the foregoing fraud and defalcation, Plaintiffs request that the debt owed to Plaintiffs by Debtor Shaw be deemed non-dischargeable in his bankruptcy.

39.     In committing the acts hereinabove described, Debtor Shaw acted willfully, maliciously, and with deliberate intent to deceive Plaintiffs, and because thereof, Plaintiffs are entitled to punitive and exemplary damages in an amount to be determined at the time of trial.

## **SECOND CLAIM FOR RELIEF**

### (Nondischargeability against Debtor Shaw pursuant to 11 U.S.C. § 523(a)(6))

40.     Plaintiffs adopt, incorporate by reference, and allege herein all of the allegations set forth in paragraphs 1 through 39, inclusive, as if set forth individually in this First Claim for Relief.

41.     Pursuant to § 523(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful and malicious conduct which results in damages shall be nondischargeable.

42.     Debtor Shaw engaged in the following willful and malicious conduct, among others:

a.     Failing to disclose to Plaintiffs the nature and extent of Shaw's relationship with Michael Holt and other individuals, including secret kickbacks and compensation paid by Shaw to Holt to secure investments from Plaintiffs;

b.     Failing to disclose to Plaintiffs the receipt of secret profits from transactions, including the Hard Money Loans, that were funded, in part, with Plaintiffs' money;

c.     Failing to disclose to Plaintiffs that when Shaw became aware of investment opportunities, he would participate as a principal in the best and most lucrative investment opportunities rather than offer participation to Plaintiffs and other clientele;

Case: 15-05060   Doc# 9   Filed: 09/28/15   Entered: 09/28/15 11:06:15   Page 10 of 12

FIRST AMENDED COMPLAINT

d. Willfully and knowingly creating real estate syndicates that Shaw knew, or reasonably should have known, would cause Plaintiffs and his other clientele to lose their invested money, so that Shaw could collect fees from originating the loan, collect a commission from participating as a broker in the transaction, and collect servicing fees through LG Servicing;

e. Willfully and knowingly sending Plaintiffs and his other clientele documents such as a "Lender Statement of Account" that conceals, misrepresents, and otherwise obfuscates both the risk of loss, and actual losses suffered by the investors; and

f. Failing to disclose to Plaintiffs that Shaw was recklessly managing his invested funds in a manner that rendered the value of many of the Hard Money Loans worthless.

43. As a direct and proximate result of the foregoing, Plaintiffs have suffered damages in an amount not presently ascertained but believed to be between $500,000.00 and $2.5 million, which should be exempted from discharge in Debtor Shaw's bankruptcy. Based on the foregoing willful and malicious conduct, Plaintiffs request that the debt owed to Plaintiffs by Debtor Shaw be deemed not dischargeable in his bankruptcy.

44. In committing the acts hereinabove described, Debtor Shaw acted willfully, maliciously, and with deliberate intent to deceive Plaintiffs, and because thereof, Plaintiffs are entitled to punitive and exemplary damages in an amount to be determined at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray as follows:

A. That this Court adjudicate the amount of debts owed by Debtor Shaw to Plaintiffs for Debtor Shaw's fraudulent, willful and malicious conduct as described herein;

B. That this Court deny discharge for the amount of debts for which Debtor Shaw is liable to Plaintiffs pursuant to §§523(a)(4) and 523(a)(6);

/ / / /

/ / / /

/ / / /

FIRST AMENDED COMPLAINT

C.    That Plaintiffs be awarded such other and further relief to which they are entitled and which the Court shall deem to be just and proper.

DATED this 28th of September, 2015

By:    /s/Jason E. Baker
       Jason E. Baker, Esq.
       Brent Jex, Esq.
       KEEGAN & BAKER, LLP
       6255 Lusk Boulevard, Suite 140
       San Diego, CA  92121
       Tel: (858) 558-9400
       Fax: (858) 558-9401
       Email: JBaker@KeeganBaker.com
              BJex@KeeganBaker.com
       *Attorneys for Plaintiffs-Creditors*


       /s/Vincent Renda
       Vincent Renda, Esq.
       RENDA LAW OFFICES, P.C.
       600 West Broadway, Suite 400
       San Diego, CA  92101
       Tel: (619) 819-0011
       Fax: (619) 819-0012
       Email: VR@RendaLawOffices.com
       *Attorneys for Plaintiffs-Creditors*

12
FIRST AMENDED COMPLAINT